UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————————  )
INTERGLOBAL FOREST, LLC                     )
                                            )
                          Plaintiff,        )
            v.                              )        Ct No. 20-03916
                                            )
UNITED STATES,                              )
                                            )
                          Defendant.        )
———————————————————————  )

## AMENDED COMPLAINT

Pursuant to Rule 15(a)(1)(A) of the Rules of the United States Court of International Trade, InterGlobal Forest, LLC ("IGF"), by its undersigned attorneys, hereby amends its Complaint and alleges the following:

### Parties

1.  IGF is a U.S. importer of hardwood plywood from Cambodia.

2.  IGF was a party to EAPA Inv. 7321, an investigation conducted by U.S. Customs and Border Protection ("CBP") under 19 U.S.C. § 1517, the Enforce and Protect Act, or "EAPA," which provides for procedures for investigating claims of evasion of antidumping and countervailing duty orders.  As a U.S. importer of hardwood plywood, IGF was an interested party in accordance with 19 U.S.C. § 1517(a)(6)(A)(i).

3.  Defendant is the United States of America, acting by and through U.S. Customs and Border Protection.

1

**<u>Contested Determinations and Summary of Procedural History</u>**

4.   On April 12, 2019 and May 1, 2019, the Coalition for Fair Trade of Hardwood Plywood

(the "Coalition") submitted to CBP allegations in accordance with 19 U.S.C. § 1517(b)(2)

that IGF was evading the antidumping and countervailing orders on hardwood plywood

from China by transshipping Chinese hardwood plywood through Cambodia for import

into the United States.  *See Certain Hardwood Plywood Products from the People's*

*Republic of China*, 83 Fed. Reg. 504 (January 4, 2018) (AD order); *see also Certain*

*Hardwood Plywood Products from the People's Republic of China*, 83 Fed. Reg. 513

(January 4, 2018) (CVD order) (collectively, the "Orders").

5.   On June 26, 2019, CBP's Trade Remedy Law Enforcement Directorate ("TRLED")

initiated EAPA Investigation 7321 against IGF as well as EAPA Investigations 7323 and

7327 against U.S. importers American Pacific Plywood, Inc. ("APPI") and U.S. Global

Forest, Inc. ("USG") ("Initiation Memo").  *See* 19 U.S.C. § 1517(b)(1).  TRLED conducted

an undisclosed investigation against IGF, APPI, and USG for the following three months.

TRLED also targeted in its secret investigation the Cambodian producers of hardwood

plywood, LB Wood Cambodia Co., Ltd. ("LB Wood"), who sold and exported plywood to

IGF and APPI, and Cambodian Happy Home Wood Products Co., Ltd. ("Happy Home"),

who sold and exported plywood to USG.

6.   On October 1, 2019, TRLED informed IGF that during its secret investigation, TRLED had

developed a record giving rise to a "reasonable suspicion" of evasion of the Orders by IGF

and the other importers.  At the same time, TRLED consolidated the three initiated EAPA

investigations into EAPA Inv. 7321.  19 U.S.C. § 1517(e) & 19 U.S.C. § 1517(b)(5).  Also,

on October 1, 2019, TRLED imposed interim measures on IGF and the other importers by suspending liquidation of the importers' entries of hardwood plywood from Cambodia, rate-adjusting these entries as subject to the Orders, and requiring cash deposits from IGF and the other importers of 194.53% *ad valorem* as of June 5, 2018.  *See* 19 U.S.C. § 1517(e).

7.    TRLED issued its final determination of evasion on June 29, 2020, stating that substantial evidence supported a finding that IGF and the other importers had evaded the Orders by entering Chinese-origin hardwood plywood subject to the Orders while declaring the country of origin of the merchandise as Cambodia. 19 U.S.C. § 1517(c)(1) (TRLED Final Determination").

8.    IGF timely filed a request for an administrative review of TRLED's final determination with CBP's Office of Trade, Regulations & Rulings ("ORR") in accordance with 19 U.S.C. § 1517(f)(1).  ORR issued the results of its administrative review on November 5, 2020 and concluded that, after a de novo review of the administrative record, substantial evidence supported TRLED's findings of IGF's evasion of the Orders in accordance with 19 U.S.C. § 1517(f)(2) ("ORR Final Determination").

9.    IGF challenges (i) TRLED's initiation of EAPA Inv. 7321; (ii) TRLED's imposition of interim measures without allowing IGF the opportunity to be heard and defend against the evasion allegations; (iii) TRLED's determination of evasion; and (iv) ORR's affirmation of TRLED's determination of evasion.

## **Jurisdiction**

10.   This Court has jurisdiction in accordance with 28 U.S.C. § 1581(c) for any civil action

3

commenced under section 517 of the Tariff Act of 1930 (19 U.S.C. § 1517). Plaintiff IGF is commencing this action in accordance with 19 U.S.C. § 1517(g)(1), which provides for judicial review by the U.S. Court of International Trade of TRLED's final determinations under 19 U.S.C. § 1517(c) and ORR's administrative review determinations under 19 U.S.C. § 1517(f).

### Standing

11.  Plaintiff IGF is a "person determined to have entered covered merchandise through evasion" and therefore has standing to bring this action in accordance with 19 U.S.C. § 1517(g)(1).

12.  Plaintiff has been adversely affected and aggrieved by TRLED's affirmative evasion determination made under 19 U.S.C. § 1517(c) and ORR's affirmation of TRLED's determination made under 19 U.S.C. § 1517(f), which are agency actions within the meaning of Section 702 of Title 5 of the United States Code. Therefore, Plaintiff has standing to bring this action under 28 U.S.C. § 2631(i).

### Timeliness

13.  An action under 28 U.S.C. § 1581(c) based on 19 U.S.C. § 1517 must be commenced within 30 business days after ORR completes its administrative review under 19 U.S.C. § 1517(f). 19 U.S.C. § 1517(g)(1). ORR completed its administrative review on November 5, 2020. Accordingly, this action is timely filed.

### Facts

14.  On April 12, 2019 and May 1, 2019, the Coalition submitted to CBP allegations in

accordance with 19 U.S.C. § 1517(b)(2) that IGF was evading the Orders, claiming that Chinese exports of hardwood plywood to the U.S. decreased from 2017 to 2018 and Chinese exports of hardwood plywood to Cambodia and Cambodian exports of hardwood plywood to the U.S. increased during the same period of time.  The Coalition therefore inferred and alleged that Chinese-origin plywood had been transshipped through Cambodia to the United States.  CBP did not inform IGF of the Coalition's allegations until October 1, 2019.

15.   On June 26, 2019, TRLED initiated EAPA Investigation 7321 against IGF, claiming that the Coalition's allegations against IGF reasonably suggested that IGF evaded the Orders by transshipping Chinese-origin hardwood plywood through Cambodia and made material false statements, acts or material omissions that resulted in the reduction or avoidance of applicable AD and/or CVD cash deposits or other security.  *See* 19 U.S.C. § 1517(b)(1) and 19 U.S.C. § 1517(a)(5).  TRLED did not inform IGF of its initiation of EAPA Inv. 7321 until October 1, 2019.

16.   On August 9, 2019, CBP issued a CF-28 Request for Information to IGF on two entries of plywood from Cambodia, to which IGF responded on September 16, 2019 with almost 200 pages of production and sales documents.  (A CF-28 is a formal request for information from CBP that typically arises during the process of liquidation.  When CBP deems entry paperwork insufficient and cannot make a decision on liquidation, CBP will send a CF-28 to importers.)  TRLED maintains that CBP's CF-28 and IGF's responses were part of TRLED's EAPA investigation, but CBP did not inform IGF at this time that TRLED had initiated an EAPA investigation.

17. On October 1, 2019, TRLED informed IGF that during its secret investigation, TRLED had developed a record giving rise to a "reasonable suspicion" of evasion of the Orders by IGF and the other importers.  At the same time, TRLED consolidated the three initiated EAPA investigations into EAPA Inv. 7321.  19 U.S.C. § 1517(e) & 19 U.S.C. § 1517(b)(5).  Also, on October 1, 2019, TRLED imposed interim measures on USG and the other importers by requesting the cash deposit rate 194.53% *ad valorem* on the importers' unliquidated entries that entered on or after June 5, 2018 of hardwood plywood from Cambodia, suspending liquidation of the importers' entries that entered on or after June 26, 2019, the initiation date, and extending the suspension for all unliquidated entries.  *See* 19 U.S.C. § 1517(e).

18. In its Interim Measures Notice, TRLED mentions that IGF's response to CBP's CF-28 request confirmed LB Wood as the producer and exporter of the covered merchandise and LB Wood's factory location, but TRLED does not weigh or analyze in any respect the production and sales documentation that IGF provided in its September 16, 2019 response.

19. Only after TRLED released its Interim Measures Notice on October 1, 2019, did TRLED release to IGF public versions of the letters from the Coalition alleging Plaintiff's evasion of the Orders, as well as TRLED's June 26, 2019 Initiation Memo.

20. In its Interim Measures Notice, TRLED based its "reasonable suspicion" of evasion largely on the trade data that the Coalition put on the record of this case and the Coalition's claim that LB Wood and IGF had motive and opportunity to evade the Orders due to the high cash deposits on U.S. imports of hardwood plywood from China and LB Wood's location in Cambodia's Sihanoukville Special Economic Zone ("SSEZ").

21. TRLED also claimed in its Interim Measures Notice that the evidence contained in a

memorandum dated September 12, 2019 provided additional evidence of IGF's evasion of the Orders ("Sept. 12, 2019 Memo").

22. TRLED disclosed to Respondents only a public version of its Sept. 12, 2019 Memo, which is an internal CBP email exchange dated July 18 and July 26, 2019 concerning a June 6, 2018 site visit that a CBP agent conducted at LB Wood's production facilities.

23. TRLED's Interim Measures Notice, however, indicates that the CBP agent's visit and the email exchange have nothing to do with IGF or EAPA Inv. No. 7321, but rather concern a review of preferential tariff treatment for Cambodian plywood under the Generalized System of Preferences ("GSP") performed well before the Coalition submitted its first allegations against IGF in April and May 2019.

24. CBP did not invite a representative from IGF or its legal counsel to be present at its June 6, 2018 visit.  Further, to date, TRLED has not disclosed to Plaintiff or legal counsel the identity of the CBP agent, the agent's report or source documentation contemporaneous with his or her June 6, 2018 visit, the amount of time the agent spent at LB Wood's facilities, the extent of the agent's examination, details on the methodology the agent used to come to his or her conclusions, corroboration that the agent's conclusions were valid, or photographs that the agent allegedly made of LB Wood's production facilities.

25. CBP's email exchange, the documents upon which the email exchange is based, and the circumstances of CBP's visit to LB Wood contain LB Wood's own business proprietary information that CBP and TRLED should have disclosed to LB Wood, but did not.

26. TRLED also incorrectly claims in its Initiation Memo that documents contained in two additional CBP memoranda pertain to LB Wood.  These memoranda, however, make no

mention of LB Wood.

27.   The actual context in which the documents contained in CBP's September 2019
      memoranda were created also remains unclear.  Whereas in its Initiation Memo, TRLED
      claims that the documentation was created in the context of a GSP review of Cambodian
      plywood, TRLED claims in its Final Determination that the documentation was generated
      in a review of whether Cambodian engineered wood flooring was subject to the
      antidumping and countervailing duties on *Multilayered Wood Flooring from China*.

28.   Neither CBP nor TRLED has disclosed the outcome of either a GSP review of Cambodian
      plywood or a review of Cambodian engineered wood flooring or demonstrated the
      precedential value of these documents for the EAPA investigation at issue here.

29.   In any case, the context, parties, and statements from the unrelated proceedings upon which
      TRLED relied in its initial and final conclusions in EAPA 7321 remain unknown to IGF
      because TRLED did not offer IGF or its legal representatives an opportunity to review the
      confidential contents of these documents.

30.   IGF unequivocally contests any relevancy or truth vis-à-vis itself of alleged statements
      from an unidentified person in a murky context that has nothing to do with EAPA Inv. No.
      7321.

31.   After TRLED's October 1, 2019 Interim Measures Notice, TRLED issued questionnaires to
      IGF and LB Wood, to which they responded in detail by providing TRLED with all
      documents requested concerning LB Wood's purchases of raw materials, production
      process, sales to IGF, and IGF's sales transactions with LB Wood and its own U.S.
      customers.  IGF and LB Wood subsequently submitted timely and complete responses to

TRLED's one round of supplemental questionnaires.  In the questionnaire response, IGF submitted photographs and documents to demonstrate that it made good faith efforts to verify LB Wood's production capacities, including making three on-site visits in 2018. IGF and LB Wood believed they had fully complied with TRLED's requirements for submission or clarification of information after TRLED issued no further questionnaires.

32. After receiving these questionnaire responses, TRLED initially scheduled verification at LB Wood's manufacturing facilities in Cambodia for February 17-22, 2020.  On February 11, 2020, TRLED postponed its verification of LB Wood due to the Corona Virus outbreak ("COVID-19") in Asia and the United States.  TRLED finally cancelled verification altogether due to associated travel restrictions and health risks.

33. On May 14, 2020, Plaintiff IGF and LB Wood, together with the other interested parties targeted in the consolidated EAPA investigation, submitted written arguments, and the Coalition submitted a response to the written arguments on May 29, 2020.

34. Most notably, during the five months between Plaintiff's and LB Wood's last questionnaire responses on December 9, 2019 and December 16, 2019, respectively, and Plaintiff's and LB Wood's submission of written argument on May 14, 2020, TRLED asked no further questions of Plaintiff or LB Wood nor indicated in any way that TRLED found discrepancies in Plaintiff's or LB Wood's questionnaire responses.

35. TRLED's failure to seek further information is inexplicable in light of TRLED's evident need to prepare for verification and, as during the months of January through May 2020, it became increasingly obvious that verification would necessarily be cancelled due to restrictions for U.S. citizens and Government officials for travel to Cambodia.

36.   TRLED could have, and should have, carried out its verification agenda with requests for reconciliation packages from Plaintiff and LB Wood.  As it turns out, TRLED attempted to carry out its own reconciliations for its final determination, resulting in conclusions of little evidentiary value because TRLED did not ask Plaintiff or LB Wood for input.

37.   Plaintiff and LB Wood prepared their questionnaire responses in full knowledge that TRLED intended to verify their responses through an on-site verification in Cambodia. IGF and LB Wood therefore carefully and truthfully prepared all responses in light of the anticipated verification of these responses.

38.   In its written argument, submitted to TRLED on May 14, 2020 as a case brief, Plaintiff showed that the trade information that the Coalition and TRLED put on the record was inconsistent and unreliable and *not specific* to Plaintiff or any of the respondent exporters and importers participating in EAPA Inv. 7321.

39.   Further, observations by the Coalition and TRLED of IGF's and LB Wood's motive and opportunity to move production of hardwood plywood from China to Cambodia was immaterial without specific instances of transshipment by IGF and LB Wood, which the record could not support.  IGF and LB Wood then set forth the record evidence showing that LB Wood produced all of the plywood shipped to the United States at their production facilities in Cambodia.

40.   Finally, IGF and LB Wood pointed out TRLED's procedural irregularities in administering the EAPA law in this case, including the lack of transparency and defense opportunities for Respondents due to TRLED's reliance on secret documents in its decision to initiate EAPA Inv. 7321 and impose punitive interim measures on IGF.

41.  TRLED issued a public version of its final determination of evasion on June 29, 2020, stating that substantial evidence supported a finding that IGF and the other importers had evaded the Orders by entering Chinese-origin hardwood plywood subject to the Orders while declaring the country of origin of the merchandise as Cambodia. 19 U.S.C. § 1517(c)(1).

42.  TRLED did not issue a confidential version of its final determination that would have allowed IGF to see its own business proprietary information used in TRLED's findings concerning the reliability and consistency of IGF's and LB Wood's record evidence.

43.  As it did in its Initiation Memo, TRLED relied on IGF's mere motive and opportunity as well as TRLED's and the Coalition's flawed trade statistics and CBP's three September 2019 secret memoranda as substantial evidence of IGF's evasion of the Orders.

44.  TRLED could not, however, point to even one instance of actual transshipment of Chinese plywood through LB Wood to IGF in the United States.

45.  TRLED included in its final determination numerous new allegations of perceived inconsistencies in the record documents that TRLED never asked the parties to explain during the investigation.  For instance, TRLED reviewed four IGF entries of LB Wood's merchandise, claiming inconsistencies in LB Wood's records and suggesting that LB Wood's documents were unreliable.

46.  In its analysis of the four IGF entries, using flawed and inaccurate methodologies, TRLED attempted reconciliations of LB Wood's production documents with inventory, LB Wood's payroll sheets with the company's balance sheets, California Air Resources Board ("CARB") certificates for sample plywood pieces with production documents, and vessel

information with bills of lading.

47.   TRLED never asked IGF or LB Wood for information to assist in the reconciliation of the

record documents that TRLED used in its analysis or offered IGF or LB Wood an

opportunity to explain or rebut perceived discrepancies in the documentation.

48.   On August 10, 2020 IGF timely requested an administrative review of TRLED's final

determination as provided by 19 U.S.C. §1517(f), following the procedures set forth in 19

CFR §165.41.

49.   LB Wood likewise requested an administrative review of TRLED's final determination

within the time limits provided by 19 U.S.C. §1517(f).  ORR rejected LB Wood's review

request and brief, however, because, according to 19 U.S.C. §1517(f), only the importers

and allegers have the right to request an administrative review.  *See also* 19 CFR §§165.41

& 165.1, which defines importers and allegers as the only "parties to the investigation."

LB Wood as a foreign producer and exporter is, however, an "interested party."  19 CFR

§165.1.

50.   As provided in 19 CFR §165.41, such a request for an administrative review is a 30-page

brief that sets forth the procedural history, facts, and argument of the party.  Thus, LB

Wood's brief contained crucial rebuttal arguments to specific TRLED findings in its final

determination regarding LB Wood's raw material purchases, production, inventory,

payroll, and financial statements as well as a rebuttal to the TRLED's conclusions from

CBP's agent's visit on June 6, 2018, to which LB Wood, as the targeted foreign producer

and exporter, is alone privy.

51.   IGF demonstrated in its request for review that CBP's visit on the occasion of an unrelated

matter could not establish substantial evidence of evasion in EAPA Inv. 7321.  CBP did not

disclose the nature of CBP's visit in June 2018 at LB Wood's facilities in Cambodia, the

identity of the CBP agent, the time the agent spent touring LB Wood's facilities, the

identities of LB Wood's management and documentation reviewed from which the agent

acquired information, or the qualifications of the agent to evaluate the production capacity

of LB Wood's operations or the quality of LB Wood's production machinery.

52.  IGF also rebutted TRLED's analysis of alleged discrepancies of its sales records and LB

Wood's production records, including details of the sample four entries that TRLED

selected for in depth discussion.

53.  IGF also demonstrated that the trade data upon which TRLED relied were not official

statistics and based on outdated information.

54.  ORR issued the results of its administrative review on November 5, 2020 and concluded

that, after a *de novo* review of the administrative record, substantial evidence supported

TRLED's findings of IGF's evasion of the Orders in accordance with 19 U.S.C. §

1517(f)(2).

55.  In a section of its final determination entitled "Arguments Made by InterGlobal and

American Pacific Plywood in their Requests for Administrative Review," ORR recited the

factual and legal arguments that IGF and APPI made in their briefs requesting review.

56.  In the section of the final determination entitled "Administrative Review Analysis,"

however, ORR did not deal with and weigh IGF's factual and legal arguments.  Rather,

ORR summed up its complete analysis of IGF's and the other importers' arguments in one

phrase: "{o}ther than the claims made by the Importers, . . .."

57.  ORR did not evaluate or comment on IGF's discussion and references to the record concerning the four sample entries that TRLED had selected for detailed analysis.  In fact, ORR did not even mention that IGF had put forth arguments in rebuttal to TRLED's perceived "discrepancies" on the four sample entries TRLED selected for in-depth discussion.  In one short paragraph, ORR merely repeated a summary of TRLED's alleged discrepancies.

58.  Despite the lack of substantial evidence of evasion on the record of EAPA Inv. 7321, ORR affirmed TRLED's findings, continuing to rely on secret documents to which IGF, LB Wood, and their legal counsel had no access and could not review or rebut, a CBP visit to LB Wood's facilities on the occasion of an undisclosed matter one year before any allegation of evasion was filed, and discredited trade data.

59.  Although ORR rejected LB Wood's separate request for review and accompanying brief, ORR maintained in its final determination that it had considered the full record of EAPA Inv. 7321, including the record facts concerning LB Wood.

60.  ORR's administrative review analysis gives no indication, however, that ORR considered any of LB Wood's arguments on such issues as reconciling its payroll sheets with its balance sheets, reconciling the company's raw material purchases and production records, and LB Wood's recollection of CBP's agent's visit on June 6, 2018 - issues based on data and information to which LB Wood alone is privy and to which LB Wood alone can respond.

61.  ORR could have, but did not, avail itself of the opportunity to request additional information from LB Wood as provided in 19 CFR § 165.44 to ensure that ORR had

considered and understood all relevant record evidence and provided all interested parties

with an opportunity to respond to TRLED's determinations concerning the record evidence

and upon which TRLED and ORR based their final determinations.

62.    Meanwhile, starting from November 2019 through August 2020, CBP liquidated a number

of IGF's "covered merchandise" entries from LB Wood at the 206% combined AD and

CVD rate.  IGF timely protested these unlawful liquidations.

## COUNT I

63.    The allegations of paragraphs 1 through 62 are restated and incorporated herein by

reference.

64.    TRLED's determination to initiate an EAPA investigation against IGF on June 26, 2019

under 19 U.S.C. § 1517(b)(1) is unlawful because the Coalition's May 1, 2019 Revised

Allegation consisted only of general trade data and the observation that IGF purchased

plywood from Cambodia but provided no nexus between these stated facts and any act of

evasion on IGF's part.

65.    TRLED therefore had no evidentiary basis that would reasonably suggest evasion.  TRLED

therefore violated 19 U.S.C. § 1517(b)(1), which directs CBP to initiate an investigation

only if it determines that the information provided in the allegation "reasonably suggests"

that an importer entered covered merchandise into the United States through evasion.  S*ee

also* 19 C.F.R. § 165.15(b)(2).

## COUNT II

66.    The allegations of paragraphs 1 through 65 are restated and incorporated herein by

reference.

67.    TRLED's final determination in EAPA Inv. 7321 and ORR's final results of its

administrative review are not based on substantial evidence or any evidence at all that

applies specifically to IGF or LB Wood.

68.    The evidentiary basis of TRLED's and ORR's decisions consists of discredited trade data

not specific to IGF and LB Wood and secret documents compiled well before the initiation

of EAPA Inv. No. 7321, and which are not related to EAPA Inv. No. 7321.

69.    Further, by relying on information, documents, and photographs as evidence, such as

pertaining to CBP's agent's visit to LB Wood, the essential contents of which were not

disclosed to IGF and LB Wood, TRLED and ORR prevented IGF and LB Wood from

developing a record of substantial evidence on critical issues for TRLED and ORR to

consider in their determinations.  TRLED's and ORR's reliance on undisclosed data as

"substantial" evidence is further discredited by rejecting LB Wood's brief to ORR,

whereby LB Wood is the only interested party that can provide a substantive rebuttal to

information pertaining to the CBP agent's visit that TRLED put on the record.

70.    TRLED and ORR have therefore not complied with the procedures required under 19

U.S.C. § 1517(c)(1)(A) & (f) which allow a determination of evasion only if supported by

substantial evidence.  *See* 19 U.S.C. § 1517(g)(2)(A) (stating that the Court should review

whether CBP "fully complied with all procedures" in making its determination).  Further,

TRLED's and ORR's determinations of evasion were not supported by record evidence and

therefore did not comport with the substantial evidence standard of Section 1517(c)(1)(A)

& (f).  *See* 19 U.S.C. § 1517(g)(2)(B) (stating that the Court should review whether CBP's

"determination, finding, or conclusion is …. not in accordance with law.").

71.    In their determinations in EAPA Inv. No 7321, TRLED and ORR have not applied an

appropriate substantial evidence standard, which "requires more than mere assertion of

'evidence which in and of itself justified {the determination}, without taking into account

contradictory evidence or evidence from which conflicting inferences could be drawn.'"

*Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (*quoting Universal*

*Camera*, 340 U.S. at 487).  Substantial evidence may not be based on "isolated tidbits of

data which suggest a result contrary to the clear weight of the evidence."  *USX Corp. v.*

*United States*, 11 C.I.T. 82, 84 (1987).

## <u>COUNT III</u>

72.    The allegations of paragraphs 1 through 71 are restated and incorporated herein by

reference.

73.    TRLED's and ORR's determinations are arbitrary, capricious, an abuse of discretion, and

otherwise not in accordance with law because 19 U.S.C. § 1517 provides for procedures to

determine through an investigation specific to the targeted parties whether they entered

merchandise into the United States by means of evasion.

74.    In this case, however, TRLED and ORR relied on information not specific to IGF or LB

Wood and, as an abuse of discretion, did not allow or seek information from LB Wood,

who, as the producer of the covered merchandise, can provide critical information for the

record to which IGF is not privy and has no knowledge.

75.    This Court will hold as unlawful any administrative decision that is arbitrary, capricious, or

an abuse of discretion. *See* 19 U.S.C. § 1517(g)(2)(B). An agency decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

76. An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors. *Arnold P'ship v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004).

## **COUNT IV**

77. The allegations of paragraphs 1 through 76 are restated and incorporated herein by reference.

78. 5 U.S.C. § 555 establishes the minimal procedural requirements for informal adjudication. *Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 474, 484 (2006), *citing to Pension Benefit Guar. Corp. v. The LTV Corp., Inc.*, 496 U.S. 633, 655, 110 S. Ct. 2668, 110 L. Ed. 2d 579 (1990).

79. CBP's site visit to LB Wood in June 2018 and CBP's initiation of EAPA Inv. No. 7321 were unlawful because CBP's lack of notice of its intended visit and initiation of the EAPA investigation denied IGF and LB Wood the opportunity to arrange for legal representation

and advisement by legal counsel and defend against allegations of evasion with advice and representation by legal counsel as provided in 5 U.S.C. § 555(b).

80. In particular, TRLED and ORR relied heavily on CBP's June 2018 site visit in their determinations and were therefore obligated to provide LB Wood and IGF notice of the visit and the opportunity for legal representation at the site visit.

81. CBP's failure to provide IGF and LB Wood with confidential versions of CBP's analysis of IGF's and LB Wood's own data, CBP's failure to provide IGF's and LB Wood's legal counsel with confidential versions of other record documents under an administrative protective order, and CBP's failure to inform IGF and LB Wood of perceived deficiencies or gaps in submitted data denied IGF and LB Wood the opportunity for effective legal representation and advice in violation of 5 U.S.C. § 555(b).

## COUNT V

82. The allegations of paragraphs 1 through 81 are restated and incorporated herein by reference.

83. 5 U.S.C. § 555 is "universally understood to establish the right of an interested person to participate in an on-going agency proceeding." *Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 474, 484 (2006), *citing to Block v. SEC*, 311 U.S. App. D.C. 126, 50 F.3d 1078,1085 (D.C. Cir. 1995) and *Amer. Commc'ns Ass'n v. United States*, 298 F.2d 648, 650 (2d Cir. 1962).

84. ORR's rejection of LB Wood's request for administrative review and brief in support of its request violated 5 U.S.C. § 555(b) because LB Wood is an interested party to EAPA Inv.

19

No. 7321 and the only party that can provide substantial information pertaining to CBP's June 2018 visit to LB Wood's manufacturing plant and LB Wood's production data.

## COUNT VI

85. The allegations of paragraphs 1 through 84 are restated and incorporated herein by reference.

86. Although TRLED did not explicitly invoke the adverse inferences provision, 19 U.S.C. § 1517(c)(3), TRLED's final determination and ORR's final determination that IGF evaded the Orders by transshipping Chinese plywood through LB Wood rests on adverse inferences because the record contains no evidence whatsoever that LB Wood shipped Chinese-origin hardwood plywood to IGF.  In imputing adverse inferences, TRLED failed to comport with the adverse inferences provision, 19 U.S.C. § 1517(c)(3).

87. TRLED's and ORR's application of adverse inferences is arbitrary and capricious and otherwise contrary to the law, because IGF and LB Wood have cooperated fully by acting to the best of their ability.  *See* 19 U.S.C. § 1517(c)(3)(A).

## COUNT VII

88. The allegations of paragraphs 1 through 87 are restated and incorporated herein by reference.

89. TRLED's imposition of interim measures suspending liquidation of its entries, requiring cash deposits from IGF of 194.53% *ad valorem* as of June 5, 2018, threatening liquidated damages, and threatening liquidation of entries at high duty rates without consideration of the record evidence as a whole and without providing IGF the opportunity to be heard and

defend against allegations of evasion and to prevent further injury to its property violated

IGF's due process rights under the Fifth Amendment of the U.S. Constitution.

90. Procedural due process imposes constraints on governmental decisions which deprive

individuals of "liberty" or "property" interests within the meaning of the Due Process

Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332; 96

S. Ct. 893, 901 (1976).  It is well established that "[t]he fundamental requisite of due

process of law is the opportunity to be heard." *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.

Ct. 779, 58 L. Ed. 1363 (1914).

91. "It is undisputed that the test for constitutional sufficiency of notice is whether '[the] notice

[is] reasonably calculated, under all the circumstances, to apprize interested parties of the

pendency of the action and afford them an opportunity to present their objections. . . . . . . .

The reasonableness and hence the constitutional validity of any chosen method may be

defended on the ground that it is in itself reasonably certain to inform those affected.'

*Transcom, Inc. v. United States*, 121 F. Supp. 2d 690, 708 (Ct. Int'l Trade 2000) *citing to*

*Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314; 70 S. Ct. 652 (1950).

92. Such opportunity must occur "at a meaningful time and in a meaningful manner." *Mathews*

*v. Eldridge*, 424 U.S. 319, 333; 96 S. Ct. 893 (1976).

## COUNT VIII

93. The allegations of paragraphs 1 through 92 are restated and incorporated herein by

reference.

94. TRLED and ORR violated IGF's due process rights under the Fifth Amendment of the U.S.

Constitution by not making available to IGF or its legal counsel the full, unredacted report or transcript of CBP's agent's testimony and exhibits and other unredacted papers and documents filed in EAPA Inv. 7321 upon which TRLED and ORR based their determinations.  ORR also failed to consider LB Wood's rebuttal to TRLED's and ORR's allegations based on information to which only LB Wood was privy.

95.  "Due process 'forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation,' *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc*., 419 U.S. 281, 289 n.4, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974). Thus, to comply with due process, Customs' procedures must afford adequate opportunity for importers to respond to the evidence used against them." *Royal Brush Mfg. v. United States*, No. 19-00198, 2020 Ct. Intl. Trade LEXIS 179, at *23 (Ct. Int'l Trade Dec. 1, 2020).

## COUNT IX

96.  The allegations of paragraphs 1 through 95 are restated and incorporated herein by reference.

97.  Insofar as the EAPA statute, and in particular 19 U.S.C. § 1517(e) (Interim measures), cannot be properly interpreted to afford importers due process under the Fifth Amendment of the U.S. Constitution and CBP is permitted to impose punitive interim measures on Plaintiff without giving Plaintiff the opportunity to defend and rebut the factual and legal bases for such measures, the EAPA statute is incompatible with the Fifth Amendment of the U.S. Constitution.  "It is impossible to comprehend how an importer's lack of a vested right to import merchandise in the future negates the obligation to provide the importer with notice prior to imposing an antidumping duty for the merchandise already imported.

The Court shares Transcom's bewilderment." *Transcom, Inc. v. United States*, 24 Ct. Int'l Trade 1253, 1271, 121 F. Supp. 2d 690, 707 (2000).

98.  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . The notice must be of such nature as reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance." *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950).

## COUNT X

99.  The allegations of paragraphs 1 through 98 are restated and incorporated herein by reference.

100.  Insofar as CBP's EAPA regulations, 19 CFR §§ 165.1 through 165.47, cannot be properly interpreted as requiring CBP to disclose confidential documents upon which CBP bases its determinations to Plaintiff or Plaintiff's legal counsel under an administrative protective order or do not allow the importer, foreign producer or exporter and their legal counsel full participation rights during the investigation, including directly after CBP receives an allegation of evasion before initiating an investigation, and at any and all related site visits, the EAPA regulations violate the Fifth Amendment of the U.S. Constitution. "{D}ue process 'forbids an agency to use evidence in a way that forecloses an opportunity to offer a contrary presentation,' *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 289 n.4, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974). Thus, to comply with

due process, Customs' procedures must afford adequate opportunity for importers to respond to the evidence used against them.  *Royal Brush Mfg. v. United States*, No. 19-00198, 2020 Ct. Intl. Trade LEXIS 179, at *23 (Ct. Int'l Trade Dec. 1, 2020).

## COUNT XI

101.  The allegations of paragraphs 1 through 100 are restated and incorporated herein by reference.

102.  After imposing interim measures under 19 U.S.C. § 1517(e), TRLED, as directed by the EAPA Statute, should have suspended liquidation of unliquidated entries of covered merchandise that entered on or after the date of initiation and extend the period for liquidating all unliquidated entries of such covered merchandise that entered before the date of the initiation of the investigation.  19 U.S.C. §§ 1517(e)(1)&(2).  After TRLED imposed interim measures on October 1, 2019, TRLED acted contrary to the law in liquidating one of IGF's "covered merchandise" entries in November of 2019.

103.  After TRLED made its June 29, 2020 Final Determination under 19 U.S.C. § 1517(c), TRLED should have continued to suspend the liquidation of unliquidated entries of such covered merchandise, continued to extend the period for liquidating such covered merchandise entries, and notified Commerce and requested Commerce to identify the applicable assessment rates.  19 U.S.C. §§ 1517 (d)(1)(A)-(C).  Contrary to the statute, TRLED liquidated several of IGF's "covered merchandise" entries in July and August of 2020.

104.  TRLED's liquidation of several of IGF's entries starting from November 2019 through

August 2020 are clear violations of the EAPA statute.  *See* 19 U.S.C. § 1517(g)(2)(B).

## COUNT XII

105.  The allegations of paragraphs 1 through 104 are restated and incorporated herein by reference.

106.  TRLED's failure to inform the Department of Commerce ("Commerce") of its June 29, 2020 Final Determination and request specific assessment rates from Commerce is not in accordance with the law.  Under 19 U.S.C. § 1517(d)(1)(C), after TRLED made its June 29, 2020 Final Determination under 19 U.S.C. § 1517(c), TRLED "shall – notify the administering authority of the determination and request that the administering authority – (i) identify the applicable antidumping or countervailing duty assessment rates" for such covered merchandise, or if no such assessment rate is available at the time, identify the applicable cash deposit rate…with the assessment rate to be provided as soon as that rate becomes available."  19 U.S.C. §§ 1517(d)(1)(C)(i)&(ii).

107.  The public record contains no such evidence that TRLED ever informed Commerce of its affirmative evasion determination and requested Commerce to determine the applicable assessment rate applicable to IGF's entries.  As such, TRLED's failure to comply with its statutory obligation is contrary to the law.  *See* 19 U.S.C. § 1517(g)(2)(B).

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment from the Court:

(1) Declaring TRLED's initiation of EAPA Inv. invalid because the allegations did not

reasonably suggest that IGF evaded the Orders; and

(2) Declaring TRLED's and ORR's final determinations unsupported by substantial evidence; and

(3) Declaring TRLED's and ORR's determinations arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; and

(4) Declaring CBP's, TRLED's, and ORR's failure to provide Plaintiff and LB Wood the opportunity for effective legal representation and advice in violation of 5 U.S.C. § 555(b); and

(5) Declaring TRLED's and ORR's refusal to grant LB Wood, as an interested party, full participation opportunity to be a violation of 5 U.S.C. § 555(b); and

(6) Declaring TRLED's EAPA Inv. No. 7321 and ORR's administrative review in violation of the Due Process Clause of the Fifth Amendment of the U.S. Constitution; and

(7) Insofar as the EAPA statute, and, in particular 19 U.S.C. § 1517(e) cannot be properly interpreted to afford importers due process under the Fifth Amendment of the U.S. Constitution, declaring the EAPA statute, in particular 19 U.S.C. § 1517(e), as unconstitutional; and

(8) Insofar as CBP's EAPA regulations, 19 CFR §§ 165.1 through 165.47, cannot be properly interpreted as requiring CBP to disclose confidential documents upon which CBP bases its determinations to Plaintiff or Plaintiff's legal counsel under an administrative protective order and allowing the foreign exporter or producer and its legal counsel full participation rights, declaring CBP's EAPA regulations, 19 CFR §§ 165.1 through 165.47 unconstitutional; and

(9) Declaring TRLED's liquidation of IGF's several entries covered by the EAPA Investigation not in accordance with law; and

(10)      Ordering CBP to liquidate and reliquidate all of IGF's entries of hardwood

plywood that were produced and exported by LB Wood at a combined AD/CVD rate of 0%; and

(11)      Granting Plaintiff such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Gregory S. Menegaz

Gregory S. Menegaz
Alexandra H. Salzman
J. Kevin Horgan
**DEKIEFFER & HORGAN, PLLC**
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
Fax: (202) 783-6909
email:  gmenegaz@dhlaw.com
*Counsel to InterGlobal Forest, LLC*

Dated:  January 7, 2021

27

**PUBLIC CERTIFICATE OF SERVICE**

**Hardwood Plywood**
**EAPA Inv. No. 7321**
**CIT: 20-03916**

      The undersigned hereby certifies that the attached Amended Complaint is served upon the following by Certified Mail/Return Receipt on January 7, 2021:

Hardeep K. Josan
**U.S. Department of Justice**
International Trade Field Office
26 Federal Plaza
New York, NY 10278

Supervising Attorney
Civil Division
Commercial Litigation Branch
**U.S. Department of Justice**
Room 12124
1100 L Street NW
Washington, DC 20530

Chief Counsel Scott K. Falk
Office of Chief Counsel
**U.S. Customs & Border Protection**
1300 Pennsylvania Ave., NW
Washington, DC 20229

Timothy C. Brightbill, Esq.
**Wiley Rein, LLP**
1776 K St. NW
Washington D.C. 20006

        /s/ Alexandra H. Salzman

**Alexandra H. Salzman**